UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| THOMAS BEARD, | |
|---|---|
| *Plaintiff,* | Civil No. 3:13cv1714 (JBA) |
| *v.* | |
| TOWN OF MONROE, *et al.,* | |
| *Defendants.* | September 18, 2014 |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

Defendants the Town of Monroe (the "Town") and Joseph Chapman, the Town's Zoning Enforcement Officer move [Doc. # 26] to dismiss Plaintiff Thomas Beard's Complaint [Doc. # 1] alleging selective enforcement of Town zoning regulations in violation of 42 U.S.C. §§ 1983 and 1988 (Count One) and his right to equal protection under Article First, Section One of the Connecticut Constitution (Count Two) on the basis that Count One is barred by the *Rooker-Feldman* doctrine and Count Two fails to state a claim for relief.  For the reasons that follow, Defendants' motion is denied as to Count One and the Court declines to exercise supplemental jurisdiction over Count Two.

**I.     Facts Alleged**

The following facts are alleged in the Complaint, which was filed in state court and removed to federal court.  Plaintiff is the owner of a property located at 462 Fan Hill Road in Monroe, Connecticut, which is in a residential and farming zone, and in July 2011, the Town and Defendant Chapman intervened in a lawsuit brought by Michael and Theresa Bauer against Plaintiff, alleging a private nuisance and that Plaintiff's production and sale of farm loam, a type of soil, on his property violated the Town's zoning regulations.  (Compl. ¶¶ 3–4.)  In April 2012, Defendants secured a judgment against

Plaintiff that enjoined him from using his property for the production and sale of farm loam because it is not a farming activity permitted by the relevant zoning regulations. (*Id.* ¶ 5.)  Both before and after this judgment, Plaintiff informed Defendants that the production and sale of farm loam was "taking place openly on other significant properties in Monroe" and the Town was delivering and purchasing farm loam from some such properties. (*Id.* ¶ 6.)

In May 2012, Plaintiff's attorney delivered to Defendants a letter "with documentary and photographic information concerning the production and sale of farm loam on three specific properties" in Monroe.  (*Id.* ¶¶ 7–8; Letter, Ex. A to Compl.) Defendants did not respond to this letter or to an oral inquiry made by Plaintiff's counsel before the Zoning Commission.  (Compl. ¶ 10.)

Plaintiff alleges that Defendants "selectively enforced the requirements of the Monroe zoning regulations against [Plaintiff] but not other property owners in residential districts who are utilizing their property for the production and sale to the public and the defendant Town of farm loam and top soil" and that there is "no objectively reasonable basis" for this disparate treatment (*id.* ¶¶ 11–15) and in doing so Defendants have violated the Equal Protection Clause of the Fourteenth Amendment (Count One) and Article First, Section One of the Connecticut Constitution (Count Two).  Plaintiff seeks monetary and punitive damages (Complaint, *ad damnum*).

II.   Discussion

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim, contending that the Court lacks jurisdiction over Count One on the basis of the *Rooker-Feldman* doctrine and Count Two does not state a claim,

2

because there is no recognized claim for monetary damages under Article First, Section One of the Connecticut Constitution.

### A.     *Rooker-Feldman* (Count One)[1]

Defendants contend that Plaintiff's selective enforcement claim in Count One is barred by the *Rooker-Feldman* doctrine, which deprives a federal court of subject matter jurisdiction when the following four requirements are met: "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *Remy v. New York State Dep't of Taxation & Fin.*, 507 F. App'x. 16, 18 (2d Cir. 2013) (internal quotation marks omitted).

There is no dispute that the first and fourth requirements of *Rooker-Feldman* are met in this case. As to the second factor, Defendants contend that "Plaintiff is, in effect, complaining of injuries he has allegedly suffered as a result of the judgment in the Bauer action" and "is asking this Court, in light of the alleged selective treatment of him, to review and reject the Superior Court's decision." (Defs.' Mem. Supp. [Doc. # 26-1] at 7–8.) Plaintiff counters that in asserting a selective prosecution claim, he complains of injury caused by Defendants' enforcement decisions against him, which occurred before

---

[1] "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* In resolving a motion to dismiss for lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings. *Id.*

entry of judgment in state court and that these injuries are not the result of the state court's judgment. (Pl.'s Opp'n [Doc. # 29] at 5.)

The *Rooker-Feldman* doctrine is derived from two Supreme Court cases: *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923), and then, 60 years later, *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). *Rooker* was a suit commenced in federal district court to have a judgment of a state court, adverse to the federal court plaintiffs, "declared null and void." 263 U.S. at 414. In *Feldman,* parties unsuccessful in obtaining admittance to the bar from the District of Columbia Court of Appeals (the District's highest court) commenced a federal-court action against the very court that had rejected their applications. Holding the federal suits impermissible, the Supreme Court emphasized that only it had jurisdiction to reverse or modify a state-court judgment and federal district courts exercise only original, not appellate, jurisdiction. 460 U.S. at 483. Aside from *Rooker* and *Feldman*, the Supreme Court had not applied the doctrine until 2005 when it emphasized the narrowness of the doctrine and explained that "the doctrine has sometimes been construed [by lower courts] to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 283 (2005).

In *Exxon Mobil*, the Supreme Court held that "[w]hen there is parallel state and federal litigation, *Rooker–Feldman* is not triggered simply by the entry of judgment in state court." *Id.* at 292. Instead, "[c]omity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in

4

favor of the state-court litigation" and "a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court." *Id.* at 293.

*Exxon Mobil* emphasized that "[t]he *Rooker–Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions."[2] *Id.* at 284.

Relying on *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005), Defendants contend that even though it appears that Plaintiff complains of injuries caused by their enforcement decisions, such injuries were "in effect" caused by the state-court judgment and thus are barred under *Rooker Feldman*. *Hoblock*, however, does not support Defendants' position. In *Hoblock*, a group of voters filed a § 1983 action against a county board of elections alleging that its refusal to tally their absentee ballots was a violation of the plaintiffs' Fourteenth Amendment rights after the state court had ordered the board to exclude these ballots. The Second Circuit held that the federal challenge was

---

[2] The following term in *Lance v. Dennis*, the Supreme Court again emphasized that *Rooker-Feldman* is a "narrow doctrine" that "applies only in 'limited circumstances,' where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." 546 U.S. 459, 464, 466 (2006) (quoting *Exxon Mobil*, 544 U.S. at 291).

barred by *Rooker-Feldman* and framed the question as "whether the voters' suit seeks 'review and reversal' of the state-court judgment." 422 F.3d at 87. Although "the voters do not want the federal court to evaluate the state court's reasoning (i.e., the federal court need not 'review' the substance of the state-court judgment)," the "federal suit is not free from *Rooker–Feldman*'s bar simply because the suit proceeds on legal theories not addressed in state court" and "[m]ore importantly, even if what the voters seek in federal court is not 'review' in some sense, the voters *do* seem to seek reversal: the state court ordered the Board not to count the voters' ballots, and the voters want the federal court to order the Board to count the ballots." *Id.*

In holding that the claim was barred, the Second Circuit noted that even though the "voters' claims in this case seem at first to complain only of the Board's refusal to tally their votes rather than of any injury caused by the state court's judgment," the Board was "acting under compulsion of a state-court order" and "a federal plaintiff [cannot] avoid *Rooker–Feldman* simply by clever pleading—by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself." *Id.* at 88. To determine whether "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions," a court must determine if "the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.*

At oral argument, Defendants suggested that *Rooker-Feldman* applied because Plaintiff in essence complains of Defendants' actions that were ratified by the state court. However, *Hoblock* makes clear that *Rooker-Feldman* does not apply to injuries that have been merely "ratified" rather than "produced" by a state court judgment. *See id.*

Additionally, Plaintiff seeks neither review nor reversal of the state court judgment in the *Bauer* action.  Plaintiff alleges that Defendants selectively enforced the zoning laws against him whereas the "primary effect of the state court judgment was simply ratification of the Town's interpretation of its regulations, and the present suit does not challenge that interpretation, or seek reversal of the state court's ratification of the Town's interpretation." (Pl.'s Opp'n at 5.)

Thus, the Court need not "review" the state court judgment to determine whether Defendants selectively enforced the zoning laws against Plaintiff, because this determination is based not on the merits of the enforcement action against him, but rather whether Plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Rose v. City of Allentown*, 211 F. App'x 133, 138–39 (3d Cir. 2007) ("Here, Rose's selective enforcement claim was not caused by a state-court judgment. Therefore, Rooker–Feldman is again inapplicable.").[3] Additionally, the Complaint does not request "reversal" of the state-court judgment but

---

[3] Prior to *Exxon Mobil*, some courts reached a contrary result.  For example, in *Shooting Point, L.L.C. v. Cumming*, 368 F.3d 379, 384 (4th Cir. 2004), the Fourth Circuit held that "a federal district court finding of selective enforcement in violation of the equal protection clause of the Fourteenth Amendment would clearly contravene the state courts' judgment," because it would "produce a result that was at odds with the result reached in the state courts."  However, *Exxon Mobil* clarified that a plaintiff's "independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party" is not precluded by *Rooker-Feldman*.  544 U.S. at 293.

rather seeks monetary damages for Defendants' alleged constitutional violations.[4] (*See* Complaint, *ad damnum*; Pl.'s Opp'n at 4.) Accordingly, Defendants' Motion to Dismiss is denied as to Count One.

### B.   Connecticut Constitution Equal Protection Claim (Count Tow)

Count Two seeks relief under Article First, Section One of the Connecticut Constitution. Under 28 U.S.C. § 1367(c), "[t]he district courts may decline to exercise supplemental jurisdiction" over a state law claim if "the claim raises a novel or complex issue of State law." Although the Connecticut Supreme Court has recognized a private cause of action for violations of Article First, Sections Seven and Nine, of the Connecticut constitution for illegal searches and seizures of private homes by police officers under certain limited circumstances, *see Binette v. Sabo,* 244 Conn. 23 (1998), "no appellate court or trial court in this state has recognized a cause of action for monetary damages" under Article First, Section One, *Schlicht v. Royer*, X03CV990509270S, 2002 WL 31886706, at *4 (Conn. Super. Ct. Dec. 4, 2002).

Given that Plaintiff seeks recognition of a new state constitutional tort, "the Court declines to exercise supplemental jurisdiction over [Plaintiff's] constitutional claims,

---

[4] Defendants originally maintained that *Rooker-Feldman* applied for the independent reason that Plaintiff's "equal protection claims in this case are inextricably intertwined with the state-court judgment in the Bauers' lawsuit as they would be barred on *res judicata* grounds." (Defs.' Mem. Supp. at 8.) However, at oral argument, Defendants acknowledged that after *Exxon-Mobile*, the phrase "inextricably intertwined" is not a separate basis for applying the *Rooker-Feldman* doctrine and that claim preclusion principles are not relevant. *See Hoblock*, 422 F.3d at 86–87 ("[D]escribing a federal claim as 'inextricably intertwined' with a state-court judgment only states a conclusion" and "has no independent content. It is simply a descriptive label attached to claims that meet the requirements outlined in *Exxon Mobil*.").

8

leaving any such recognition of new state constitutional torts to Connecticut courts." *M.A. v. City of Torrington*, No. 3:10CV1890 (JBA), 2012 WL 3985166, at *4 (D. Conn. Sept. 10, 2012); *see also Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 154 (2d Cir. 2013) ("[T]he construction of the provision . . . at issue raises an unresolved issue of state law . . . that should be resolved by the . . . state courts because the manner in which the statute is construed implicates significant state interests.").

III.    **Conclusion**

For the reasons set forth above, Defendants' Motion [Doc. # 26] to Dismiss is DENIED as to Count One and the Court declines to exercise supplemental jurisdiction over Count Two.


IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 18th day of September, 2014.